Samuel WILLIAMS, Plaintiff,

v.

E.B. ALFORD, etc., et al., Defendants.

Civ. A. No. 85–D–549–N.

United States District Court,
M.D. Alabama, N.D.

Nov. 13, 1986.

Maurice S. Bell and David G. Flack, Montgomery, Ala., for plaintiff.

Robert C. Black and Randall Morgan of Hill, Hill Carter, Franco, Cole & Black, Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

DUBINA, District Judge.

Plaintiff brought this action under 42 U.S.C. § 1983 alleging numerous constitutional violations committed by members of the Montgomery, Alabama, police department pursuant to their investigation of plaintiff's alleged drug activities beginning in January 1982 and culminating in plaintiff's convictions in 1985 for sale and trafficking in cocaine.

Plaintiff named as defendants in this action a state circuit court judge; the district attorney for Montgomery County, Alabama; the City of Montgomery, Alabama; the chief of police; and the chief of investigation for the Montgomery, Alabama, police department. Plaintiff also named as defendants all other persons under the control and supervision of the Montgomery Police Department, including, but not limited to, members of the Montgomery City Police Vice and Narcotics Unit. In his complaint, plaintiff sought to enjoin defendant Judge Joseph Phelps and defendant District Attorney Jimmy Evans from prosecuting and trying criminal charges pending against plaintiff in state court. This Court held that injunctive relief was not proper and dismissed these two defendants from this cause. The entire police force, with the exception of the named police supervisors, was dismissed; however, plaintiff was allowed an opportunity to amend his complaint to name as defendants those officers responsible for the alleged unconstitutional activity. Plaintiff failed to amend and added no additional defendants to this suit.

At the close of the testimony presented at trial, the Court granted defendant Swindall's motion for directed verdict as there was no evidence presented linking defendant Swindall in any way with the complained of violations.[1] Therefore, the only remaining defendants in this cause are E.B. Alford and the City of Montgomery.

Plaintiff claims that his Fourth and Fourteenth Amendment rights were violated by the defendants. This action is based upon four separate encounters plaintiff had with the police over a three-year period.

On January 5, 1982, Mary McCord, a Montgomery police officer was murdered by Paul Murray. Defendant E.B. Alford, Chief of the Investigative Division for the Montgomery Police Department, received information that plaintiff had been supplying Murray with drugs. On January 6, 1982, Officer Russell, a member of the Vice and Narcotics Unit of the Montgomery Police Department, obtained a search warrant for the home of plaintiff and his wife at

---

1. In fact, plaintiff's counsel had no objection to the Court's granting defendant Swindall's mo-
tion for directed verdict.

2181 George Mull Road.[2] Neither plaintiff nor his wife were at home, and officers conducting the search forced entry by breaking the door open. No drugs were found. Plaintiff admitted in his testimony that he lost no property during the search and that his door was repaired by city maintenance workers. By the time plaintiff returned home, his wife had cleaned up the residence.

■ The conduct of police officers in executing a search warrant is always subject to judicial review as to its reasonableness. *Dalia · v. United States*, 441 U.S. 238, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979). Officers may incur liability under 42 U.S.C. § 1983 if the warrant is executed in an unreasonable manner. *Duncan v. Barnes*, 592 F.2d 1336, 1338 (5th Cir.1979). The test of reasonableness under the Fourth Amendment is a balancing test. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979); quoted in *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1502 (11th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). Based upon the evidence, this Court finds that this particular search was not unreasonable in light of the fact that officers acted pursuant to a warrant, no personal property was destroyed, and the door to plaintiff's residence was repaired.

■ At the time this search was being conducted, police officers located plaintiff at a local golf course. Plaintiff was asked to go with the officers to police headquarters for the purpose of speaking to defendant Alford. Plaintiff alleged in his complaint that he was arrested on this occasion without probable cause. The evidence at trial, however, clearly demonstrated that plaintiff was not under arrest. He was merely asked to go with the officers for the purpose of seeing defendant Alford. Plaintiff was aware of the fact that he was not under arrest. At one point, he asked the officers if he was under arrest and was told that he was not. This Court finds from the evidence that plaintiff voluntarily went with the police downtown to speak to defendant Alford. "[A] seizure or detention within the meaning of the Fourth Amendment only occurs 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.'" *U.S. v. Rodriquez-Franco*, 749 F.2d 1555, 1560 (11th Cir.1985) (citations omitted). The circumstances presented concerning this first search do not implicate a Fourth Amendment violation.

■ After plaintiff signed a consent form, his car was searched at the police station. Although plaintiff had alleged that this search was conducted without probable cause, at trial he admitted signing a consent form for the search after defendant Alford had read the contents of the form to him. Searches conducted by means of consent are valid so long as the consent is voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The Court finds plaintiff's consent for a search of the car was voluntarily given in this instance.

■ At trial, plaintiff testified that his car was damaged as a result of the search. Plaintiff merely indicated that some panelling in his trunk and the cruise control were damaged. No monetary value of this damage was provided nor was any other evidence, other than plaintiff's conclusory allegations, introduced to prove damages. Plaintiff filed no claims with the city for the alleged damage done to his car. This

---

2. In his complaint, plaintiff attacked the legality of each search warrant, claiming that they were based upon false affidavits, taken in bad faith, and were issued without probable cause. Because plaintiff completely failed to produce any evidence at trial concerning the illegality of the search warrants, they are presumed by this Court to be valid.

Court finds from the evidence that the search of the car was not unreasonable.[3]

Plaintiff alleges that the next two searches—the search of November 4, 1982, and the search of December 7, 1983—violated his Fourth Amendment rights.[4] The second and third searches were executed at plaintiff's apartment located at 2280–C Lower Wetumpka Road, Montgomery, Alabama.[5]

The evidence demonstrated that the November 4, 1982, search occurred after Officer J.H. Strope obtained a search warrant. Officer Strope and Officer I.T. Dotson, members of the Vice and Narcotics Unit of the Montgomery Police Department, knocked on the door of the plaintiff's apartment at night with guns drawn. Plaintiff opened the door, then immediately shut it. He then obtained a gun and fired it through the door toward the officers.[6] The officers entered plaintiff's apartment, and it was searched pursuant to the search warrant.[7] Plaintiff challenges that search as being unreasonable. The evidence demonstrated that plaintiff's apartment was left in an untidy condition by the officers conducting the search. It was described by one of the plaintiff's witnesses as a "pig sty." Plaintiff's witnesses offered differing testimony concerning the condition of the apartment, and photographs taken after the search contradicted some of these witnesses' testimony. The only damage shown from this search was a hole in the wall in the plaintiff's bedroom where a piece of sheet rock behind a picture had been ripped out. Again plaintiff failed to produce any evidence of damages but merely testified that it took time and money to clean up the apartment.

The third search, which took place in December 1983, was a search conducted pursuant to a warrant by Officer J.B. Andrews, Officer R.G. Brown and and Officer

---

**3.** The Court notes that even unreasonable conduct in some instances may not be actionable in a § 1983 suit based upon an alleged violation of the Fourth Amendment where the injury is too minor to rise to the level of a constitutional violation. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

**4.** Plaintiff alleged in his complaint that, between the first and second searches, he was followed and given numerous traffic citations. He also claimed that his car was searched repeatedly during this time frame. There was evidence of only two traffic stops given at trial. On each of those occasions, plaintiff was merely given a courtesy warning ticket. On the second occasion, plaintiff was stopped for speeding but was arrested for disorderly conduct when he failed to cooperate with the arresting officer. The evidence demonstrated that the police officer felt that he was in some danger, as plaintiff was belligerent and plaintiff's friends would not leave the area despite several requests to do so. An inventory search, pursuant to the arrest, was taken of the plaintiff's car. The inventory search is routine for any vehicle impounded by the Montgomery Police Department. Inventory searches of impounded vehicles have been upheld as valid searches. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). No connection was ever made between these incidents and defendants Alford and the City of Montgomery. There were no allegations of conspiracy, and the arresting traffic officer said that he had never been instructed by anyone to harass plaintiff.

**5.** The only evidence plaintiff offered concerning the legality of these search warrants was the fact that these warrants listed plaintiff's residence as 2280–C Traction Avenue. The evidence at trial indicated that plaintiff's apartment building sat on the corner of Lower Wetumpka Road and Traction Avenue. This would make it understandable why the apartment address might be mistaken as being on Traction Avenue. The United States Court of Appeals for the Eleventh Circuit has held that as long as the search warrant describes the premises with sufficient particularity to direct officers to the correct apartment and to place occupants on sufficient notice of the officers' authority to search the premises, technical defects in the warrant's description will not violate the Fourth Amendment. *U.S. v. Burke,* 784 F.2d 1090 (11th Cir. 1986).

**6.** Plaintiff was later charged with attempted murder. He was found not guilty after a jury trial.

**7.** This search warrant was later declared invalid. Eight days after the search occurred, the Supreme Court of Alabama determined that the nighttime search statute in Alabama was unconstitutional. *See Ex Parte DeMent,* 424 So.2d 659 (Ala.1982). The drugs which were eventually found around plaintiff's premises on this search were suppressed as evidence, and the drug case was nol-prossed.

Thornton. This search was the result of an investigation initiated by Officer Andrews. The search warrant included a search of the person of plaintiff. There was conflicting testimony as to whether plaintiff was strip searched; however, the Court credits Officer Thornton's testimony that plaintiff was not strip searched. There was very little testimony provided concerning any alleged damage on this third search. Primarily, the testimony demonstrated that plaintiff's house was again left in disarray.[8] No drugs were found during this search.

■ Plaintiff did not name the individual officers involved in the second and third searches as defendants. Defendant Alford testified that he had no knowledge of these searches, and he was not in charge of these investigations. No evidence to the contrary was produced at trial. It is clear that supervisors cannot be held liable for the acts of employees solely on the basis of respondeat superior. *McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1388 (11th Cir.1981), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). There must be a causal connection between the actions of the supervisory official and the alleged deprivation. *Wilson v. Attaway,* 757 F.2d 1227, 1241 (11th Cir.1985). There was never any causal connection established between defendant Alford and the violations alleged to have occurred on searches two and three.

Most of the evidence presented at trial concerned the fourth search which occurred on February 13, 1985, at the plaintiff's apartment. Plaintiff's claims regarding this search fall into two separate categories: First, he alleges a substantive due process violation in the form of police abuse. Plaintiff claims that, during this search, the police forced him to sit in his living room wearing pajama bottoms and a tee shirt despite the fact that it was "freezing" inside because the police had turned off the heat. He also claims that they denied him access to warm clothes and medication. This Court adopts the standards pronounced in *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), for identifying substantive due process violations. *See Gilmere v. City of Atlanta,* 774 F.2d 1495, 1500 (11th Cir. 1985). The Court in *Johnson* stated:

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson v. Glick,* 481 F.2d at 1033.

■ Plaintiff proved no injuries as a result of the police conduct. Furthermore, although the evidence demonstrated that the search took place on a cold February morning, there was credible evidence to support the fact that when the police entered the apartment, it was extremely warm. The police turned off the heat because it was uncomfortable and the heater needed to be searched. Plaintiff claims he asked twice for clothing but was given clothing only on the second request. Officer Thornton testified that he gave plaintiff some pants and a sweater when plaintiff asked for clothes. Pictures taken after plaintiff was placed under arrest verify that plaintiff was given clothes. Further, plaintiff failed to prove that he was denied medication. In considering the *Johnson v. Glick* factors, this Court finds that plaintiff's substantive due process rights with respect to the police abuse claim were not violated.

Secondly, plaintiff claims that the search and seizure on this occasion were unreasonable. Numerous photographs were introduced in evidence demonstrating that plaintiff's apartment was thoroughly searched

---

8. Most of the evidence presented at trial concerned the fourth and final search. A majority of the pictures introduced in evidence depicted damage to the plaintiff's apartment as a result of this fourth search.

and left in disarray. Holes were knocked through sheet rock in the bedroom. Officer L.H. Brown admitted that he knocked holes in the wall in areas where he observed fresh plaster as he knew from experience that cocaine could easily be hidden in such places. Other than the destruction caused by the holes in the walls, plaintiff testified that his stereo was broken. He estimated that he paid three hundred dollars for the stereo and that it was six years old. This was the only monetary estimate of damages given by plaintiff at trial. Plaintiff offered no estimates on the other damage allegedly done to his other personal property. He also claimed that some of the items seized in the search, primarily one of his guns, were returned in damaged condition. Trash was also dumped out of the trash can and not put back in the can before the police left the area. Plaintiff was arrested on this occasion because cocaine was found during the search.[9]

When government officials are lawfully searching a house pursuant to a search warrant, they may detain the occupants of the premises while the search is conducted. *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). For Fourth Amendment purposes, a warrant founded on probable cause to search for contraband implicitly carries with it a limited authority to detain the occupants of the premises while a proper search is conducted. Therefore, the Court finds that plaintiff's detention during this search was not unreasonable.

Plaintiff complains that the police again used forcible entry. The evidence demonstrates that the police secured the door after they left. The officer who broke in testified that he announced himself and waited thirty seconds to a minute before forcing the door. He testified that he could hear people moving around inside the apartment and that he felt these were exigent circumstances. In light of these facts, this Court finds that forced entry on this occasion was not unreasonable. *See*

*U.S. v. Davis*, 617 F.2d 677, 695 (D.C.Cir. 1979), *cert. denied*, 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980) (where a forced entry to execute a search warrant was found warranted by the circumstances after police had waited at least fifteen to thirty seconds after announcing themselves before entering). Defendant Alford was present at this particular search, and it was apparently on this search that most of the property damage occurred. The destruction of property does not necessarily violate the Fourth Amendment. *Tarpley v. Green*, 684 F.2d 1 (D.C.Cir.1982). In fact, the Supreme Court of the United States has recognized that relatively minor tortious conduct by police officers will not negate the constitutionality of a search. *Gilmere v. City of Atlanta*, 774 F.2d at 1509 (Tjoflat, J., concurring in part and dissenting in part). The Supreme Court stated in *Dalia v. United States, supra* at 258, that "officers executing search warrants on occasion must damage property in order to perform their duty." From the evidence presented in the instant case, this Court finds that the search, in light of the circumstances, was not unreasonable. Most of the police officers who testified stated that cocaine is easily hidden and that it is often found in unusual places. This fact, considered in conjunction with the fact that the search warrant indicated that an informant had purchased a quantity of cocaine from the plaintiff within the preceding seventy-two hours, warranted a thorough search. This Court finds that the destruction of property by the police was minimal although the house was left in substantial disarray. It is the Court's opinion that this type of disarray, which plaintiff and his associates were able to clean up rather easily, does not state a violation of constitutional magnitude.

Plaintiff's claim is essentially directed to the reasonableness of the search. Reasonableness in the Fourth Amendment context is to be determined by "balanc[ing] the nature and quality of the intrusion on the

9. This arrest led to plaintiff's convictions for sale of cocaine and trafficking in cocaine. Plaintiff is currently incarcerated for these convictions.

individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). The state has a strong interest in curtailing drug trafficking. Because of the nature of the evidence sought in these cases, searches must necessarily be intrusive. The United States Court of Appeals for the District of Columbia addressed concerns over this kind of intrusion in *U.S. v. Davis,* 617 F.2d at 696. That Court said:

> No search can be pleasant for the homeowner. It undeniably represents an intrusion into his privacy, but the intrusion is one that society has elected to accept. Using force to enter is to be expected when, after knocking, the police are not admitted freely. The narcotics business often is a violent one, and police executing a warrant to search for narcotics understandably would have their weapons drawn when entering without consent. Furthermore, the proper execution of a warrant demands a thorough search of the premises. Even if conducted with due care for preserving the homeowner's possession, any complete examination necessarily carries with it some risk of damage. Narcotics in particular may be hidden in very small places, so an effective search in this case would require a painstaking examination of most of the property in [plaintiff's] house.

◼ Plaintiff also claims that he was strip searched on this occasion. Defendant Alford testified that he had no knowledge of any strip search. The warrant did not include a search of the plaintiff's person. The evidence presented at trial was conflicting as to whether the officers strip searched plaintiff before he was arrested or after he was arrested and as to whether plaintiff voluntarily agreed to be strip searched or was ordered to be strip searched. Although, Officer Thornhill was identified as the officer who strip searched plaintiff, he was not named as a defendant in this cause. The evidence was uncontroverted that defendant Alford in no way participated in or authorized a strip search

of the plaintiff. Thus, this claim cannot stand against defendant Alford under the theory of respondeat superior. *See McLaughlin v. City of LaGrange, supra.*

◼ Further, plaintiff claims that his rights were violated pursuant to the policies of the City of Montgomery. Municipalities are liable for civil rights violations under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, municipal liability must be predicated on more than a respondeat superior theory. The plaintiff must show that a government employee's unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision-making channels." 436 U.S. at 690–691, 98 S.Ct. at 2036. The policy or custom must be the "moving force behind the constitutional deprivation before liability may attach." *City of Oklahoma v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2434, 85 L.Ed.2d 791 (1985). To establish a policy or custom, a persistent pattern of conduct and practice must be shown. Random acts or isolated incidents are insufficient to establish a custom or policy. *DePew v. City of St. Marys, Georgia,* 787 F.2d 1496, 1499 (11th Cir.1986). Plaintiff's contention concerning the City was that searches and seizures are routinely made without probable cause and that they are unreasonable in their scope. Plaintiff claims that the City has a policy of allowing officers complete freedom during searches, which results in unnecessary destruction of property. Furthermore, plaintiff claims that despite the guilt or innocence of the party being searched, property damages are not compensated.

◼ Police officers testified that the City has an unofficial policy that, in searches wherein property is damaged, if a claim is subsequently filed with the police department, compensation will be made if

no drugs are found. Each of the police officers who testified stated that it was a policy of the department to conduct searches in a manner that is least destructive of property. Officers testified that although efforts are made to restore the searched premises to its original condition, the apartment or dwelling searched is not necessarily cleaned up. A review of the evidence leads this Court to conclude that plaintiff has failed to establish that Montgomery City Police Officers engage in a pattern of unreasonable destruction of property when executing valid search warrants. There was no credible evidence presented that any of the four searches, which are the subject of this lawsuit, were taken maliciously or were unreasonable in their scope. The City's policy with respect to removal of parts of a wall or a panel is that the removal is conducted in such a manner as to cause the least amount of damage. At any rate, plaintiff's proof did not satisfy *Monell's* requirement that a constitutional deprivation be shown to have resulted from a custom that was so permanent and well-settled as to have the force of law. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. Indeed, the overwhelming evidence demonstrated that the Montgomery police officers are trained with respect to reasonableness in the execution of search warrants and each stated that policy in a similar fashion.

In conclusion, this Court finds that plaintiff has failed completely to prove those allegations contained in his complaint, as amended, against defendants E.B. Alford and the City of Montgomery. Defendants are entitled to judgment in this cause.

A separate order will be entered consistent with this memorandum opinion.