228 N.J. Super. 204 (1988)
549 A.2d 458
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOSE CAVASSA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 27, 1988.
Decided October 20, 1988.
Before Judges ANTELL, DREIER and HAVEY.
*205 Raymond P. Vivino, Passaic County Counsel, for appellant (John Fiorello, Assistant County Counsel, on the brief).
Jose Cavassa, respondent pro se, submitted a brief.
The opinion of the court was delivered by ANTELL, P.J.A.D.
The State appeals from an order dated March 24, 1988 directing that it return to defendant currency and jewelry seized as the alleged proceeds of illegal activity. The order was entered on the ground that the State failed to enforce its rights thereto pursuant to the Forfeiture Act, N.J.S.A. 2C:64-1 et seq., and therefore had no interest therein.
Defendant was arrested September 27, 1986 and later indicted for illegal possession of cocaine and possession of cocaine with intent to distribute, N.J.S.A. 24:21-19(a)(1) and N.J.S.A. 24:21-20. He pled guilty to one charge of possession and one charge of possession with intent to distribute, and he was sentenced to an aggregate term of imprisonment of 12 years with a six year parole disqualifier.
At the time of his arrest, $765 in United States currency and 12 items of jewelry were taken from defendant's person. Around the end of 1987, after he had begun serving his sentence, defendant wrote to the trial court, requesting return of his property. County Counsel, who was representing the State, objected to the request, whereupon the court advised defendant, by letter dated February 26, 1988, that a sworn statement was needed to support his claim of ownership. Defendant furnished such an affidavit about March 7, 1988. He explained therein that the $765 represented what remained from an $1100 cash payment he had received for carpentry work on an identified customer's house in Paterson, and that he was holding it for the October 1 rent payment coming due on his wife's apartment. Additionally, he identified the source of each item of jewelry. The articles consisted of watches, rings, gold chains, bracelets and religious emblems, most of which had *206 been left to him by his parents and brother. No papers were filed by the State to dispute defendant's claim of ownership.
N.J.S.A. 2C:64-1a specifies which properties are "subject to" forfeiture. Separately classified as "prima facie contraband" under § 1a(1) are: "controlled dangerous substances, firearms which are unlawfully possessed, carried, acquired or used, illegally possessed gambling devices and untaxed cigarettes." Enumerated under § 1a(4), are "Proceeds of illegal activities, including, but not limited to, property or money obtained as a result of the sale of prima facie contraband as defined by subsection a. (1)...."
N.J.S.A. 2C:64-3a directs the following:
Whenever any property other than prima facie contraband is subject to forfeiture under this chapter, such forfeiture may be enforced by a civil action, instituted within 90 days of the seizure and commenced by the State and against the property sought to be forfeited.
It is clear that the property in question is "property other than prima facie contraband."
On this appeal the State seems to argue that its title to the seized property vested at the time of seizure and, notwithstanding the above quoted statute, that the institution of a civil action under N.J.S.A. 2C:64-3a is not necessary to establish its title. Its reliance on Farley v. $168,400.97, 55 N.J. 31 (1969), and Spagnuolo v. Bonnet, 16 N.J. 546 (1954), for this proposition is misplaced.
In Farley a sum of cash money, which was the product of gambling activities, was discovered and seized by Hudson County officials. The Internal Revenue Service thereupon made a jeopardy tax assessment against the owner of the money for income taxes and interest. It was not until after the IRS assessment that the County obtained its judgment of forfeiture against the money. See State v. Moriarty, 97 N.J. Super. 458 (Law Div. 1967). The New Jersey Supreme Court resolved the question of priority to the funds, as between the two claims, by applying to the County's judgment of forfeiture the doctrine of relation back to the time of the unlawful activity of which the *207 money was a product. On this basis, the judgment of forfeiture was adjudged to have priority over the lien of the tax assessment.
In the course of its opinion the Supreme Court wrote the following:
In short, then, when a statute provides for a forfeiture, the forfeiture takes place upon the occurrence of the forbidden act or omission unless the statute provides otherwise, and the sovereign's title is in no sense inchoate because procedural due process requires an opportunity to dispute the claim of forfeiture in a judicial proceeding. The judgment in such a proceeding simply resolves a title contest, as it does in other settings, as when the situs of ownership depends upon the construction of a will or a deed, or upon a relationship to a deceased, or upon adverse possession. The judgment which settles the dispute does not initiate the title; it serves only to confirm the title by dissipating claims against it. [Farley, 55 N.J. at 40. (Emphasis supplied).]
At the outset it appears that the State's contention is defeated by the unequivocal statement in the excerpted passage that "procedural due process requires an opportunity to dispute the claim of forfeiture in a judicial proceeding." Since the only available judicial proceeding, the one provided for by the Forfeiture Act, has not been invoked by the State, it follows that defendant has not been accorded the procedural due process essential to a valid forfeiture.
The logic of the State's position is that all property which it seizes is presumptively contraband and therefore forfeited until the rightful owner proves his title and demonstrates that it is not the product of illegal activities. From this understanding, of course, it would follow that the provision for a civil action under N.J.S.A. 2C:64-3a is superfluous.
To accept the State's reading of Farley we would have to disregard the fact that under N.J.S.A. 2C:64-1 the specified property is merely "subject to" forfeiture and that under N.J.S.A. 2C:64-3a the right of forfeiture is made enforceable by a civil action instituted within 90 days of the seizure. It is the obvious purpose of the foregoing enactments to require the State to prove the contraband nature of the seized property and to allow the owner and other interested parties to defend *208 against the seizure. We therefore reject the suggestion that Farley recognizes the vesting of title upon seizure by the State without a judgment of forfeiture. The proposition settled by Farley is only that the judgment of forfeiture, once obtained, relates back to the date of the unlawful activities from which the seized property was derived. As noted by the Farley court, Spagnuolo v. Bonnet is merely to the same effect. Farley, 55 N.J. at 41. These cases do not obviate the necessity of proving the right to title by the exclusive statutory procedure.
The point we make is more clearly developed in the Law Division opinion which was affirmed by the Supreme Court in Farley sub nom. State v. Moriarty, supra. Judge Rosen explained in the following way that which we consider to have been left unchanged by the Farley decision:
There is a distinction between a common law or judicial forfeiture and a legislative or statutory forfeiture. A common law or judicial forfeiture does not operate or take effect until, by a proper judgment in a suit instituted for that purpose, the rights of the state or Government have been established, but in a case of a statutory or legislative forfeiture, the forfeiture takes place at the commission of the offense. In the case of a legislative or statutory forfeiture the rights of the state, after judicial determination [emphasis supplied], date back to the time of the offense. There is a further distinction between the two types of forfeitures. In the common law type of forfeiture the actions are in personam for a money judgment against defendant, while suits upon the legislative forfeitures are in rem, not against the owner or possessor of the property but against the property itself, which is treated as the real offender. In either event, the primary object of the proceeding is to obtain judicial declaration of the forfeiture. The common law forfeiture results in a money judgment against a defendant, while the legislative forfeiture results in a decree confirming title. In either situation, however, judicial proceedings or the special statutory equivalent thereof are essential to provide the due process without which the original owner cannot be deprived of his property. [Emphasis supplied.] [Citations omitted.] In United States v. Stowell, 133 U.S. 1, 16-17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890), the court stated:
"By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and the condemnation, when obtained, relates back to *209 that time, and avoids all intermediate sales and alienations, even to purchasers in good faith." [Moriarty, 97 N.J. Super. at 473.]
Our understanding of the statutory requirements is further strengthened by N.J.S.A. 2C:64-2, dealing with forfeiture procedures related to prima facie contraband. That provision states:
Prima facie contraband shall be retained by the State until entry of judgment or dismissal of the criminal proceeding, if any, arising out of the seizure. Thereafter, prima facie contraband shall be forfeited to the entity funding the prosecuting agency involved, subject to the rights of owners and others holding interests pursuant to section 2C:64-5.
That the Legislature intended a forfeiture proceeding to be essential to the State's acquisition of title to seized property is seen from the fact that it recognized a distinction between the State's right to retain possession of prima facie contraband pending disposition of a criminal proceeding and its right to acquire absolute title thereto. In order to acquire title, a forfeiture is provided for "subject to the rights of owners and others holding interests pursuant to section 2C:64-5." The rights of owners and other parties in interest cannot be protected by any means short of recourse to the civil action prescribed by N.J.S.A. 2C:64-3a, in which the State must demonstrate the contraband nature of the property. Accordingly, where the State intends to seek forfeiture of property, it may do so only pursuant to the specified procedure.
In reading the statute as we do, we are mindful that "forfeitures are not generally favored in the law." State v. 1979 Pontiac Trans Am, Color Grey, 98 N.J. 474, 483 (1985); State v. One (1) Ford Van Econoline, 154 N.J. Super. 326, 331 (App.Div. 1977). Statutes imposing forfeitures
... should be construed strictly and in a manner as favorable to the person whose property is to be seized as is consistent with the fair principles of interpretation.... The courts will not search for a construction to bring about a forfeiture; nor will a constrained construction be indulged in in order to create a forfeiture. [37 C.J.S., Forfeitures, § 4b at 9.]
See also, U.S. v. One 1936 Model Ford, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249 (1939); State v. Garcia, 114 N.J. Super. 444, 447 (Law Div. 1971); State v. LaBella, 88 N.J. Super. 330, 338 *210 (Law Div. 1965); 36 Am.Jur.2d, Forfeitures and Penalties, § 8 at 615-616.
The requirement that forfeiture proceedings be conducted in conformity with time requirements is of constitutional dimension. "Where the delay is unjustified forfeiture proceedings are defeated on the reasoning that the deprivation of property during the intervening period constitutes a denial of due process." State v. One (1) Ford Van Econoline, 154 N.J. Super. at 336, and cases there cited. It is not disputed that the 90 days within which the forfeiture of defendant's property "may be enforced" has long since passed. Moreover, no application was ever made by the State for an extension of time within which to institute the forfeiture proceeding; nor have we been told of any facts in the record which could demonstrate the existence of extenuating circumstances sufficient to justify the granting of such an application.
Additionally, we reject the State's argument that before the property was ordered returned to defendant, the State was entitled to a summary hearing at which defendant would be obliged to prove his ownership of the property and its freedom from the taint of contraband. The summary hearing to which the State evidently alludes is that provided for as part of the forfeiture proceeding under N.J.S.A. 2C:64-3f. As we have said, no such forfeiture proceeding was ever pending in the court because none was ever instituted by the State; therefore, no summary hearing was available. Further, since defendant's claims to ownership of the property were never challenged, and since the time within which the State may seek a forfeiture has passed, no viable questions of fact were projected which could properly have been the subject of a hearing.
Finally, we comment on the form of procedure employed by defendant to obtain return of his property. Ideally, the correct form of procedure would have been the independent replevin action suggested in State v. One 1976 Pontiac Firebird, 168 N.J. Super. 168, 177-178 (App.Div. 1979). However, the more *211 economical practice followed here of applying for relief within the criminal action seems to have received recognition in the trial courts and, absent special considerations, we see no reason to interfere therewith, particularly where, as here, defendant's claim raised no disputed issues.
AFFIRMED.