242 N.J. Super. 148 (1990)
576 A.2d 292
STANLEY GURSKI, EILEEN GURSKI, H/W; JOSEPH GURSKI, A MINOR BY HIS GUARDIANS STANLEY & EILEEN GURSKI; AND CHRISTOPHER GURSKI, A MINOR BY HIS GUARDIANS STANLEY & EILEEN GURSKI, PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY STATE POLICE DEPARTMENT AND THOMAS J. SANTANGELO, DEPUTY ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS, AND ROBERT GLENN, J. DELISIO, J. MAI, R. MILLER, K. SALBATO, J. RUMPLASH, J. REYNOLDS, R. RIVERA, AND J.V. JACOBS, STATE POLICE DETECTIVES, AND CLINTON L. PAGANO, SUPERINTENDENT OF NEW JERSEY STATE POLICE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 8, 1990.
Decided June 4, 1990.
*151 Before Judges MICHELS, DEIGHAN and R.S. COHEN.
Rosemarie R. Williams, Deputy Attorney General, argued the cause for appellants (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Michael R. Clancy, Assistant Attorney General, of counsel and Rosemarie R. Williams, on the brief).
Joseph P. Depa, Jr. argued the cause for respondents.
The opinion of the court was delivered by MICHELS, P.J.A.D.
We granted leave to defendants Robert Glenn, J. Delisio, J. Mai, R. Miller, K. Salbato, J. Rumplash, J. Reynolds, R. Rivera, and J.V. Jacobs, New Jersey State Police Officers (hereinafter collectively referred to as State Police Officers) and Clinton L. Pagano, Superintendent of the New Jersey State Police Department (Superintendent Pagano) to appeal from an order of the Law Division that denied their motion for summary judgment in this action brought by plaintiffs Stanley Gurski (Gurski) and Eileen Gurski, individually and on behalf of their minor children, Joseph Gurski and Christopher Gurski under 42 U.S.C.A. 1983 and the New Jersey Tort Claims Act.
By way of background, on April 17, 1985, a warrant was issued authorizing the search of Gurski and his home for firearms. The State Police had received information that Gurski was engaged in firearms dealings within the State of New Jersey without having obtained a New Jersey firearms dealer's *152 license. The following day, April 18, 1985, at approximately 8:00 a.m., several State Police Officers appeared at the Gurski residence to execute the warrant. Although Gurski was not at home at the time, his wife and children were there. The officers entered the premises and began their search. Gurski charged that during the search, the State Police Officers frightened his wife and children, refused to allow them to leave, used abusive language in their presence, directed sarcastic comments at his wife, and destroyed and mutilated his property, including breaking a set of stairs leading to the attic, shattering flower pots and vandalizing an heirloom cedar chest. Additionally, Gurski charged that the State Police Officers helped themselves to refreshments, including soda and coffee, left dirty cups and utensils, used the telephone, relaxed on his lawn furniture and "dry fired" weapons in full view of the neighbors.
Pursuant to the search, the State Police Officers seized numerous firearms, explosive devices and related items. When Gurski returned home, five hours after the search had begun, he was placed under arrest. Gurski was charged with (1) possession of destructive devices in violation of N.J.S.A. 2C:39-3a; (2) possession of a machine gun in violation of N.J.S.A. 2C:58-5 and N.J.S.A. 2C:39-5a; (3) possession of firearm silencers in violation of N.J.S.A. 2C:39-3c; (4) the manufacture of firearm silencers in violation of N.J.S.A. 2C:39-9c and N.J.S.A. 2C:5-1a(3), and (5) the manufacture of firearms in violation of N.J.S.A. 2C:58-1 et seq. and N.J.S.A. 2C:39-9d. Following a jury trial, Gurski was acquitted of all charges.
On May 7, 1986, Gurski filed a motion in the Law Division seeking the return of the various weapons and destructive devices that were seized by the State Police. The State did not oppose Gurski's application, and therefore, on June 10, 1986, the trial court ordered the return of all property seized by the State Police Officers on April 18, 1985. Upon receipt of the trial court's order directing the return of Gurski's property, the State Police, apparently for the first time, undertook a review of the items seized to determine if any of them were illegal per *153 se and constituted contraband. On September 15, 1986, the State Police informed Gurski that certain items were illegal contraband and, therefore, would not be returned.
On September 19, 1986, more than one year after the property was seized and approximately three months after the trial court ordered its return, the State Police returned to Gurski all property seized with the exception of those items that were considered to be contraband. Gurski thereupon moved for sanctions against the State for failure to comply fully with the trial court order of June 10, 1986. The State Police contended that sanctions should not be imposed since it had attempted in good faith to comply with the order by returning all of Gurski's property with the exception of the alleged "prima facie contraband," which it claimed could not be legally returned. On May 28, 1987, the trial court ordered that the State return "any and all property held by it to [Gurski] ... within 20 days." The order further provided that if the State did not return the property within 20 days or file an appeal and obtain a stay of the order, a sanction of $200 per day would be imposed for each day the State was in violation of the order. In addition, the trial court awarded Gurski counsel fees of $500.
The State appealed and we stayed the order to enable the State to institute forfeiture proceedings and to seek a court order impounding the alleged items of contraband pursuant to the provisions of N.J.S.A. 2C:64-1 et seq. We also ordered the State to furnish Gurski with a list of all items seized and the name and address of the person having custody and control over these items. Thereafter, in an unpublished opinion, we affirmed the order of the Law Division awarding Gurski counsel fees. State v. Gurski, (A-4783-86T5).
The State instituted a civil forfeiture proceeding in the Law Division. The State sought a judgment (1) extinguishing any and all property rights or claims that Gurski had in the items seized and (2) confirming that the ownership of those items vested in the State at the time of its seizure pursuant to *154 N.J.S.A. 2C:64-1a(1) and N.J.S.A. 2C:64-2. On the day that the matter was scheduled for trial, the State and Gurski entered into a tentative settlement. However, Gurski was later notified that the proposed settlement had not been approved by State authorities. The trial court thereupon directed all counsel, as well as a representative of the State Police, to appear and explain why the proposed settlement could not be finalized. On April 15, 1988, the State's attorney informed the trial court that Superintendent Pagano had disapproved the proposed settlement. Gurski then moved for summary judgment dismissing the forfeiture claim. The trial court granted the motion, reasoning simply that "the matter was decided, an order was entered and there was no appeal taken from that order. The matter is res judicata." We reversed the order of the trial court in a published opinion in State v. One Wrist Sling Shot, 230 N.J. Super. 498, 553 A.2d 1352 (App.Div. 1989). We held there that the State should have an opportunity to present evidence to establish that the property seized constituted prima facie contraband within the forfeiture provisions of the New Jersey Code of Criminal Justice notwithstanding the failure of the State to contest the trial court's order, stating, in part:
The State's failure to contest the return of the seized property, whether the result of mistake or neglect on the part of the Deputy Attorney General or the State Police official handling this matter, cannot operate to negate the State's responsibility and duty to provide for the public safety of its citizens in seeking the forfeiture of prima facie contraband pursuant to the provisions of the New Jersey Code of Criminal Justice (Code). N.J.S.A. 2C:64-1 et seq. N.J.S.A. 2C:64-1 of the Code specifically describes property that is subject to forfeiture and in which no property right shall exist. N.J.S.A. 2C:64-2 and N.J.S.A. 2C:64-3 set forth the procedure to be followed with respect to the forfeiture of prima facie contraband and property other than prima facie contraband. See State v. Cavassa, 228 N.J. Super. 204, 209 [549 A.2d 458] (App.Div. 1988). Here, there has never been a judicial determination as to whether the property seized constitutes prima facie contraband under N.J.S.A. 2C:64-1, and on the sparse record before us we cannot make such a determination.
Moreover, balancing the principle of finality of judgments with the equally important principle that justice should be done in every case and with the paramount concern of the public safety, we are convinced that the uncontested order of June 10, 1986, should not be given res judicata effect to bar the present forfeiture proceedings. The doctrine of res judicata is not absolute. *155 See Hodgson v. Applegate, 31 N.J. 29, 43 [155 A.2d 97] (1959); Matter of Coruzzi, 95 N.J. 557, 568 [472 A.2d 546] (1984), app. dism., 469 U.S. 802, 105 S.Ct. 56, 83 L.Ed.2d 8 (1984); Plainfield v. Public Service Electric and Gas Co., 82 N.J. 245, 258-259 [412 A.2d 759] (1980). To permit the return of weapons that may constitute prima facie contraband, solely by reason of the State's failure to contest the June 10, 1986, order or to move for relief from that order, is contrary to the interests of justice and may adversely affect the public safety. The State, therefore, should have an opportunity to present evidence to establish that the property seized constitutes prima facie contraband within the forfeiture provisions of the Code. [230 N.J. Super. at 503-505, 553 A.2d 1352].
We, therefore, remanded the matter to the trial court to enable the State to prosecute the forfeiture proceeding.
Plaintiffs instituted this civil action against defendants Division of State Police, Deputy Attorney General Santangelo and nine State Police Officers, alleging violations of their constitutional rights under 42 U.S.C.A. 1983 (Section 1983) and further alleging malicious prosecution, intentional infliction of emotional distress and malicious conversion of property. On October 14, 1988, defendants moved for summary judgment on all counts of the complaint. The trial court dismissed the action against the Division of State Police, its departments and agencies and Deputy Attorney General Santangelo. The trial court also dismissed the counts of the complaint charging defendants with malicious prosecution, but denied the motion for summary judgment with respect to the State Police Officers as to those counts alleging intentional infliction of emotional distress and for the claims under Section 1983. Defendants filed a notice of motion for leave to appeal nunc pro tunc. We denied the motion. On May 16, 1989, the Supreme Court granted defendants' motion for leave to appeal and remanded the matter to the trial court for review and clarification of its order, directing that said review be conducted in light of the objective good faith standard set forth in Kirk v. City of Newark, 109 N.J. 173, 536 A.2d 229 (1988). Gurski v. New Jersey State Police *156 Dep't, 117 N.J. 67, 563 A.2d 831 (1989).[1] Pursuant to the mandate of the Supreme Court, the trial court on remand held that based on Gurski's version of the facts the State Police Officers' conduct was not objectively reasonable and again denied their motion for summary judgment. We granted the State Police Officers and Superintendent Pagano leave to appeal.
Defendants contend essentially that the trial court did not perform the good faith immunity review mandated by the Supreme Court and, therefore, the order should be reversed and summary judgment granted in favor of them. We disagree and affirm the denial of summary judgment with respect to the State Police Officers substantially for the reasons expressed by Judge McKenzie in his letter opinion of November 13, 1989.
Additionally, we point out that the United States Supreme Court, in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), defined the limits of qualified or "good faith" immunity by formulating a test that focuses on the objective legal reasonableness of an official's act. There, the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410. In so holding, the Supreme Court noted that this standard was not a "license to lawless conduct." Id. at *157 819, 102 S.Ct. at 2739, 73 L.Ed.2d at 411. Indeed, the Supreme Court emphasized that:
The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences." [Id. (quoting Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967))].
In Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the United States Supreme Court decided the question "of the degree of immunity accorded a defendant police officer in a damages action under 42 U.S.C. § 1983 ... when it is alleged that the officer caused the plaintiffs to be unconstitutionally arrested by presenting a judge with a complaint and a supporting affidavit which failed to establish probable cause." Id. at 337, 106 S.Ct. at 1094, 89 L.Ed.2d at 276. Applying the standard of objective reasonableness, the Supreme Court held that a police officer would "not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Id. at 341, 106 S.Ct. at 1096, 89 L.Ed.2d at 278.
One year after its decision on Malley, the United States Supreme Court in Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), considered the issue of a federal law enforcement officer's liability for money damages arising from an illegal search where a reasonable officer could have believed that the search comported with the Fourth Amendment. Discussing the standard set forth in Harlow, the Supreme Court stated:
The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due *158 Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. Harlow would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." Davis [v. Scherer], supra [468 U.S. 183], at 195, 82 L.Ed.2d 139, 104 S.Ct. 3012 [at 3019 (1984)]. It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell [v. Forsyth], supra [472 U.S. 511], at 535, n. 12, 86 L.Ed.2d 411, 105 S.Ct. 2806 [at 2820 n. 12 (1985)]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. See, e.g., Malley, supra [475 U.S.], at 344-345, 89 L.Ed.2d 271, 106 S.Ct. 1092 [at 1097-98]; Mitchell, supra [472 U.S.], at 528, 86 L.Ed.2d 411, 105 S.Ct. 2806 [at 2816-17]; Davis, supra [468 U.S.], at 191, 195, 82 L.Ed.2d 139, 104 S.Ct. 3012 [at 3017-18, 3019-20]. [Id. 483 U.S. at 639- 640, 107 S.Ct. at 3038-3039, 97 L.Ed.2d at 530-531].
Thus, the relevant inquiry in Anderson focused on the "objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." Id. at 641, 107 S.Ct. at 3040, 97 L.Ed.2d at 532.
The New Jersey Supreme Court, after considering the prior United States Supreme Court decisions, adopted the objective good faith standard for determining whether law enforcement officials are entitled to the qualified immunity defense in Section 1983 actions. See Kirk v. City of Newark, 109 N.J. 173, 536 A.2d 229 (1988). In Kirk, the plaintiff brought a Section 1983 action against the defendant police detective, alleging that the detective caused him to be arrested without probable cause. *159 There, the Court observed that the United States Supreme Court "has interpreted section 1983 to limit the rights of plaintiffs and to encourage disposition of the actions as a matter of law, at least when these actions arise out of an alleged unlawful arrest, search, or seizure by a law enforcement officer." Id. at 179, 536 A.2d 229. See also Anderson v. Creighton, supra; Malley v. Briggs, supra. Applying the standard set forth in Anderson, and its predecessors, the Court held that a state law enforcement official is entitled to a favorable judgment as a matter of law where the official's conduct is found to be objectively reasonable under the circumstances. Kirk v. City of Newark, supra, 109 N.J. at 185, 536 A.2d 229.
Here, the trial court found that probable cause for the search existed and, therefore, the only issue was whether the manner in which the search was conducted gave rise to a constitutional violation, subjecting the State Police Officers to liability for civil damages. Thus, the trial court was required to determine on the summary judgment motion whether the State Police Officers and Superintendent Pagano executed the search warrant in an objectively reasonable manner.
The summary judgment procedure "is designed to provide a prompt, businesslike and inexpensive method of disposing of any cause which a discriminating search of the merits in the pleadings, depositions and admissions on file, together with the affidavits submitted on the motion clearly shows not to present any genuine issue of material fact requiring disposition at a trial." Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 74, 110 A.2d 24 (1954). Nonetheless, because summary judgment is a stringent remedy, the moving parties' burden on such a motion is "to exclude any reasonable doubt as to the existence of any genuine issue of material fact.... All inferences of doubt are drawn against the movant in favor of the opponent of the motion. The papers supporting the motion are closely scrutinized and the opposing papers indulgently treated." Id. *160 at 74-75, 110 A.2d 24. See also Brenner and Co. v. Perl, 72 N.J. Super. 160, 166, 178 A.2d 19 (App.Div. 1962). If there is the slightest doubt as to the existence of a material issue of fact, a summary judgment motion should be denied. Garley v. Waddington, 177 N.J. Super. 173, 179, 425 A.2d 1084 (App.Div. 1981); Linn v. Rand, 140 N.J. Super. 212, 216, 356 A.2d 15 (App.Div. 1976). See also United Advertising Corp. v. Metuchen, 35 N.J. 193, 195-196, 172 A.2d 429 (1961).
Thus, in Ruvolo v. American Casualty Co., 39 N.J. 490, 499, 189 A.2d 204 (1963), our Supreme Court summarized the standard governing the grant or denial of summary judgment, commenting:
It is a matter of common knowledge that such judgments are to be granted with extreme caution. The moving papers and the pleadings are to be considered most favorably to the party opposing the motion. All doubts are to be resolved against the movant. It has been said on the federal scene (after whose rule our own is patterned) that a litigant has the right to trial where there is the slightest doubt as to the facts. Peckham v. Ronrico Corp., 171 F.2d 653, 657 (1 Cir.1948); Doehler Metal Furniture Co. v. United States, 149 F.2d 130, 135 (2 Cir.1945). If there is such a doubt it cannot be said the movant's case is unequivocally established or that palpably there is no genuine issue as to any material fact challenged. (Citation omitted).
The point, of course, is that summary judgment should not be granted unless the right thereto appears so clearly as to leave no room for controversy. Considered in this light, we are convinced that the trial court properly denied the State Police Officers' motion for summary judgment.
Section 1983 of the Federal Civil Rights Act, in pertinent part, provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
Thus, police officers may incur liability under Section 1983 if they execute a search warrant in an unreasonable manner. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Duncan v. Barnes, 592 F.2d 1336, 1338 (5th Cir.1979). *161 See also Davidson v. O'Lone, 752 F.2d 817, 829 (3d Cir.1984), aff'd sub nom. Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Douglas v. Marino, 684 F. Supp. 395, 398 (D.N.J. 1988) (stating "[o]utrageous conduct or abuse of official power clearly rises to the level of a § 1983 claim"). A police officer's conduct "in executing a search warrant is always subject to judicial review as to its reasonableness." Williams v. Alford, 647 F. Supp. 1386, 1389 (M.D.Ala. 1986), aff'd 829 F.2d 1130 (11th Cir.1987) (citing Dalia v. United States, 441 U.S. 238, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979)). In determining the reasonableness of a search, courts are required to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110, 118 (1983). See Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1, 7 (1985); Gilmere v. City of Atlanta, 774 F.2d 1495, 1502 (11th Cir.1985), cert. den. 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); Lear v. Township of Piscataway, 236 N.J. Super. 550, 553, 566 A.2d 557 (App.Div. 1989).
The trial court properly balanced the nature and quality of the intrusion upon plaintiffs' constitutional interests against the importance of the State's interests and properly concluded based on Gurski's version of the facts that the State Police Officers' conduct in executing the warrant was not objectively reasonable. According to Gurski, whose charges for purposes of the motion stood unrefuted, the State Police Officers destroyed his personal property, used the telephone without obtaining permission, "frolicked" on the lawn, dry firing weapons, used abusive language, directed sarcastic comments at his wife and frightened both his wife and children. Such conduct by police officers is not reasonable. No police officer in the course of executing a warrant can or should, without justification or sufficient reason, destroy private property, take or use any personal property of another without permission, or use abusive *162 language. We are satisfied on this record that the State Police Officers failed to exclude all reasonable doubt as to the non-occurrence of the unreasonable conduct with which they were charged, thus precluding the granting of summary judgment with respect to the Section 1983 claims and mandating a plenary hearing as to them.
We are satisfied also that the trial court properly denied summary judgment in favor of the State Police Officers with respect to all claims asserted under the Tort Claims Act. N.J.S.A. 59:3-3 of the Tort Claims Act provides qualified immunity from tort claims for a public employee acting "in good faith in the execution or enforcement of any law." The same standard of reasonableness, which applies in Section 1983 cases, also applies "in determining questions of good faith arising under the Tort Claims Act, N.J.S.A. 59:3-3." Lear v. Township of Piscataway, supra, 236 N.J. Super. at 553, 566 A.2d 557. See Hayes v. Mercer County, 217 N.J. Super. 614, 621-622, 526 A.2d 737 (App.Div.), certif. den. 108 N.J. 643, 532 A.2d 226 (1987). See also Kirk v. City of Newark, 109 N.J. 173, 536 A.2d 229 (1988). Since we hold, based on this record, that the conduct of the State Police Officers in executing the lawfully issued warrant was objectively unreasonable and that the State Police Officers failed to exclude all reasonable doubt as to the existence of genuine issues of material fact, they also were not entitled to immunity as a matter of law with respect to the claims under the Tort Claims Act.
However, the summary judgment with respect to Superintendent Pagano stands on a different ground. The trial court granted summary judgment in favor of Superintendent Pagano with respect to the Section 1983 claims. It did not grant summary judgment in his favor with respect to those claims brought under the Tort Claims Act. In our view this was error. There was probable cause for the issuance of the warrant. Superintendent Pagano was not present during the execution of the warrant and there is nothing in the record to show or even *163 suggest that he participated in, ordered, condoned or ratified the complained of conduct by the State Police Officers in executing the warrant. Thus, he is not liable for any damages that may have been caused by the State Police Officers in the execution of the search warrant.
Moreover, we hold that Superintendent Pagano is entitled to immunity as a matter of law with respect to all claims against him arising out of the seizure and retention of Gurski's property. Superintendent Pagano's actions were taken solely in his capacity as the Superintendent of the State Police and under the authority mandated by State law, specifically N.J.S.A. 2C:64-1 et seq. As we emphasized in State v. One Wrist Sling Shot, supra, 230 N.J. Super. at 503-505, 553 A.2d 1352, the State had a responsibility and duty to provide for the public safety of its citizens in seeking the forfeiture of the prima facie contraband pursuant to the provisions of the New Jersey Code of Criminal Justice, specifically N.J.S.A. 2C:64-1 et seq. Therefore, Superintendent Pagano had a duty to order and direct the retention of all contraband that was seized pursuant to the search warrant issued against Gurski. Because Superintendent Pagano was acting in the public's interest he is entitled to immunity and an absolute defense to this civil action.
Accordingly, the order denying summary judgment in favor of defendant State Police Officers is affirmed. The order denying summary judgment in favor of Superintendent Pagano is reversed and judgment is entered dismissing the action against him with prejudice. The matter is remanded to the trial court for further proceedings.
NOTES
[1] During the pendency of the appeal, plaintiffs amended their complaint to include as a defendant Superintendent Pagano. Thereafter, the trial court granted Superintendent Pagano's motion to dismiss the Section 1983 claims but did not grant his motion with respect to claims asserted against him under the Tort Claims Act. Superintendent Pagano argues on this appeal that the trial court also denied summary judgment with respect to him at the same time that it denied the motion of the State Police Officers. However, neither the order of the trial court nor its letter opinion specifically refers to or mentions Superintendent Pagano. Nonetheless, we are treating the order under review to include Superintendent Pagano.