**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4705-16T4

SAYEED AL SHEHAB and FATIMA
YASMEEN,

        Plaintiffs-Respondents,

v.

NEW JERSEY TRANSIT CORP.,
P.O. EDUARDO GOMEZ, DET.
MARIANNA TROPEANO and CAPT.
ANDREW KEELAN,

        Defendants,

and

P.O. TONI CRUZ and SGT.
DOMINIC IMPERIALE,

        Defendants-Appellants.

_____

        Argued October 12, 2017 — Decided November 8, 2017

        Before Judges Nugent, Currier and Geiger.

        On appeal from Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-5277-14.

        Beth A. Ferlicchi, Deputy Attorney General, argued the cause for appellants (Christopher S. Porrino, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Ferlicchi and Daniel M.

Vannella, Deputy Attorneys General, on the brief).

Steven L. Menaker argued the cause for respondents (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Mr. Menaker, of counsel and on the brief).

PER CURIAM

This is a civil rights action in which plaintiffs Sayeed Al Shehab and Fatima Yasmeen seek damages arising out of the arrest of Al Shehab for theft of an iPad.[1] On leave granted, defendants Toni Cruz and Dominic Imperiale appeal from the orders denying their motions for summary judgment and reconsideration. After a careful review of the record and applicable legal principles, we reverse.

### I.

When viewed in a light most favorable to the non-moving plaintiffs, we glean the following facts from the record.[2] On October 1, 2013, members of the New Jersey Transit Police Department were conducting an undercover sting operation to combat theft of personal property at the Pavonia-Newport station of the

---

[1] Unless otherwise indicated, references in this opinion to plaintiff mean only Al Shehab, not Yasmeen.

[2] Because defendants moved for summary judgment, we must consider the facts in a light most favorable to plaintiff and grant plaintiff all favorable inferences. Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 536 (1995).

New Jersey Transit Light Rail line. Both uniformed officers and officers in plain clothes were present at the station. Officers placed an unattended "bait iPad" on a bench at the station and kept it under surveillance.

At the same time, plaintiff was commuting from his job in Jersey City to his home in Teaneck by using the Light Rail. While waiting to board a train at the Pavonia-Newport station, plaintiff heard a woman who had been sitting on a bench yell, "Someone forgot their iPad!" Officer Cruz, who was in plain clothes, observed plaintiff pick up the iPad from the bench, hold it aloft, and repeat, "Someone forgot their iPad." Although a uniformed New Jersey Transit police officer was approximately "six to seven feet" away from plaintiff at this time, plaintiff did not approach the uniformed officer with the iPad.

Plaintiff alleges that he saw a motion or heard a noise that led him to believe the iPad's owner was a passenger on the train. Plaintiff then boarded the train. Cruz followed plaintiff onto the train and stood within three feet of him. Plaintiff again asked if anyone forgot their iPad but no one claimed ownership. A fellow passenger suggested that the iPad might belong to someone who boarded a southbound train. Another passenger said the iPad could be taken to New Jersey Transit's Customer Service Office at the Hoboken terminal.

3

Plaintiff exited the train at Second Street Station, the very next stop. Plaintiff never approached the train operator with the iPad. Cruz followed plaintiff off the train. Plaintiff then walked past another uniformed New Jersey Transit police officer but did not approach the officer. Plaintiff was about to walk past Imperiale, who was in plain clothes but wearing a New Jersey Transit Police badge, when Imperiale stopped him. Plaintiff admitted that he would have walked past Imperiale if he had not been stopped. Plaintiff asked, "Is it about the iPad?" Another officer responded, "What about the iPad?" Plaintiff told Imperiale that he got on the train because he thought he heard something that indicated that the owner was on the train. He also said that someone on the train told him to return the iPad to customer service in Hoboken. Plaintiff was then arrested for theft of the iPad, handcuffed, and taken to the Hoboken terminal.

Plaintiff was charged with theft of movable property, N.J.S.A. 2C:20-3(a). He was detained for approximately three hours in a holding cell and released on a summons. On October 22, 2013, the Hudson County Prosecutor's Office administratively downgraded the charge to a disorderly persons offense. On December 3, 2013, a municipal court judge dismissed the charge before trial at the request of the municipal court prosecutor.

Al Shehab and his wife, Yasmeen, filed suit against defendants New Jersey Transit and several members of the New Jersey Transit Police Department. In their third amended complaint, plaintiffs alleged that Officer Eduardo Gomez, Detective Marianna Tropeano, Officer Toni Cruz, Sergeant Dominic Imperiale, and Captain Andrew Keelan were liable for false arrest (count one), unlawful imprisonment (count two), and malicious prosecution (count three). Plaintiffs further allege that each defendant is liable for violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 (count four) and that New Jersey Transit was liable for negligent hiring, training, and supervision (count five). Plaintiffs later stipulated to the dismissal of defendants Gomez and Tropeano.

Plaintiff claimed he incurred legal expenses to defend the theft charge. He also claimed he was terminated from his job as a contract consultant as a result of his arrest and was unable to obtain replacement employment until February 11, 2014. Plaintiffs claimed they endured severe financial and personal consequences as a result of Al Shehab's arrest, prosecution, and loss of employment.

Yasmeen was not present during her husband's arrest or detention. Although it is not clear from plaintiff's complaint, it would appear that Yasmeen asserts a derivative per quod claim.

After discovery was completed, defendants moved for summary judgment. The Law Division judge granted summary judgment to defendants New Jersey Transit, Officer Eduardo Gomez, and Detective Mariana Tropeano but denied the motion as to defendants Captain Andrew Keelan, Officer Toni Cruz and Sergeant Dominic Imperiale. Defendants Keelan, Cruz, and Imperiale moved for reconsideration. On reconsideration, the judge granted summary judgment to Keelan but denied it to Cruz and Imperiale.

## II.

Our review of a ruling on summary judgment is de novo, applying the same legal standards as the trial court. Nicholas v. Mynster, 213 N.J. 463, 477-78 (2013). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); accord Brill, supra, 142 N.J. at 528-29.

"An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c). "The inquiry is

'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Liberty Surplus Ins. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill supra, 142 N.J. at 536).

"The motion court must analyze the record in light of the substantive standard and burden of proof that a factfinder would apply in the event that the case were tried." Globe Motor Co. v. Iqdalev, 225 N.J. 469, 480 (2016). "Thus, 'neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action.'" Ibid. (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

### III.

Defendants contend they are entitled to qualified immunity because they acted with probable cause, or reasonably believed that probable cause existed, when they arrested plaintiff.

To determine whether qualified immunity applies, two inquiries are pertinent: (1) were plaintiff's constitutional rights violated when the officers arrested him; and (2) "was the constitutional right being violated clearly established at the time so that any reasonable officer acting competently in the circumstances would have known of the constitutional violation."

Brown v. State, 230 N.J. 84, 89 (2017). When undertaking this inquiry, the court must view the facts in the light most favorable to the party asserting the injury. Id. at 98.

In Brown, the Court provided the following overview of qualified immunity.

> The affirmative defense of qualified immunity protects government officials from personal liability for discretionary actions taken in the course of their public responsibilities, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The defense extends to suits brought under . . . the Civil Rights Act, N.J.S.A. 10:6-1 to -2.
>
> This state's qualified immunity doctrine tracks the federal standard, shielding from liability all public officials except those who are plainly incompetent or those who knowingly violate the law.
>
> [Id. at 97-98 (citations omitted).]

The Court also discussed the procedure to be utilized when determining whether defendants are qualifiedly immune from liability.

> Ordinarily, application of the defense of qualified immunity is a legal question for the court rather than the jury; therefore, the defense should be raised and resolved long before trial. Qualified immunity relieves an eligible defendant from the burden of trial.
>
> An exception to that rule arises when the case involves disputed issues of fact. In such a circumstance, the case may be submitted

to the jury to determine the who-what-when-where-why type of historical fact issues, after which the trial judge may incorporate those findings in determining whether qualified immunity applies.

[Id. at 98-99 (citations omitted).]

A.

"[T]he Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." Michigan v. DeFillippo, 443 U.S. 31, 36, 99 S. Ct. 2627, 2631, 61 L. Ed. 2d 343, 349 (1979). "In the absence of probable cause . . . an arrest is an unreasonable seizure in violation of our Federal and State Constitutions." State v. Gibson, 218 N.J. 277, 292 (2014). Therefore, lawfulness of the arrest in this case depends on whether Cruz and Imperiale had probable cause to believe that plaintiff had committed or was committing a theft of the iPad or reasonably believed that probable cause existed. Morillo v. Torres, 222 N.J. 104, 118-19 (2015).

"Probable cause has been defined as a well grounded suspicion that a crime has been or is being committed, and as a reasonable ground for belief of guilt." Gibson, supra, 218 N.J. at 292 (citations omitted). It "is more than a mere suspicion of guilt, [but] less than the evidence necessary to convict a defendant of a crime in a court of law." State v. Basil, 202 N.J. 570, 585

(2010). "In determining whether there was probable cause to make an arrest, a court must look to the totality of the circumstances, and view those circumstances from the standpoint of an objectively reasonable police officer." <u>Ibid.</u> (citations omitted).

It is well settled that "'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." <u>DeFillippo</u>, <u>supra</u>, 443 <u>U.S.</u> at 37, 99 <u>S. Ct.</u> at 2632, 61 <u>L. Ed.</u> 2d at 349-50. "Thus, when a plaintiff asserts that he or she was unlawfully arrested, a law enforcement officer can defend such a claim 'by establishing either that he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence.'" <u>Morillo</u>, <u>supra</u>, 222 <u>N.J.</u> at 118-19 (quoting <u>Kirk v. City of Newark</u>, 109 <u>N.J.</u> 173, 184 (1988) (citation omitted)). In determining whether a "reasonable police officer could have believed" that probable cause existed to arrest a suspect, <u>Kirk</u>, <u>supra</u>, 109 <u>N.J.</u> at 184, courts should only consider the facts and circumstances actually known by the officers when they make an arrest. <u>DeFillippo</u>, <u>supra</u>, 443 <u>U.S.</u> at 37, 99 <u>S. Ct.</u> at 2632, 61 <u>L. Ed.</u> 2d at 349-50.

If probable cause existed for the arrest, or if a reasonable police officer could have believed in its existence, plaintiff's constitutional rights were not violated and he has no viable cause of action for false arrest, unlawful imprisonment, malicious prosecution, or violation of his civil rights.

Plaintiff was arrested for theft of movable property, N.J.S.A. 2C:20-3(a). "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." N.J.S.A. 2C:20-3(a).

Here, Cruz observed plaintiff pick up and walk away with the bait iPad, which she knew did not belong to him. Cruz further observed him walk past a nearby uniformed officer without mentioning the iPad and enter the train. Plaintiff did not approach the train operator regarding the iPad. Cruz followed him on board and observed him exiting the train at a station other than where the customer service office was located. Cruz then saw plaintiff walk by yet another nearby uniformed officer without mentioning the iPad. Viewed objectively, the officers had a well-grounded suspicion that plaintiff was committing a theft of the iPad.

Defendants reasonably discounted plaintiff's explanation (offered only after he was stopped) that he was planning on going

11

to the customer service office to return the iPad. Arresting officers are not required to believe protestations of innocence. The fact that innocent explanations may be proffered for a suspect's conduct does not necessarily vitiate probable cause. Illinois v. Gates, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 2335 n.13, 76 L. Ed. 2d 527, 552 n.13 (1983) ("In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts."); United States v. Funches, 327 F.3d 582, 587 (7th Cir. 2003) ("Of course, the mere existence of innocent explanations does not necessarily negate probable cause."); cf. State v. Arthur, 149 N.J. 1, 11 (1997) (stating "simply because a defendant's actions might have some speculative innocent explanation does not mean that they cannot support articulable suspicions if a reasonable person would find the actions are consistent with guilt").

A court must determine whether the evidence of criminal behavior is sufficient to create probable cause, notwithstanding possible innocent explanations. Determination of the issue requires a weighing of the totality of the circumstances. See State v. Pineiro, 181 N.J. 13, 28-29 (2004) (applying the totality of the circumstances test in the probable cause context).

12

Although plaintiff's subjective intent to turn the iPad into lost and found would negate an element of theft, his subjective intent is not dispositive of whether the officers had probable cause to arrest him. We must consider only the facts and circumstances known to Cruz and Imperiale at the time of arrest. When viewed objectively, the undisputed facts warranted a reasonable officer to believe that plaintiff had committed or was committing a theft. Therefore, we find there was probable cause to arrest plaintiff. Moreover, even if probable cause did not exist, the facts within the officers' knowledge were sufficient to warrant a prudent police officer, or one of reasonable caution, to believe that probable cause existed to charge plaintiff with theft of the iPad. See DeFillippo, supra, 443 U.S. at 37, 99 S. Ct. at 2632, 61 L. Ed. 2d at 349-50.

Cruz and Imperiale acted reasonably. "[T]here was neither a knowing violation of law nor a transgression of the competence standard demanded of law enforcement officers for qualified immunity to provide a shield from personal liability . . . ." Morillo, supra, 222 N.J. at 108. Therefore, each of the causes of action against Cruz and Imperiale should have been dismissed as they were entitled to qualified immunity from liability. Id. at 108, 118-19.

13

B.

Defendants also contend that they are entitled to qualified immunity because the constitutional right asserted by plaintiff was not clearly established. Defendants are entitled to qualified immunity so long as New Jersey law did not clearly establish that their conduct was unlawful under the circumstances. Brown, supra, 230 N.J. at 106. To make that determination, we would be required to assess whether, on October 1, 2013 (the date of plaintiff's arrest), the law was sufficiently clear that a reasonable official in defendants' position would have known that the warrantless arrest violated plaintiff's rights. See ibid. (citation omitted).

In view of our holding that there was probable cause, we need not reach or decide whether the constitutional right asserted by plaintiff was clearly established as of the time of his arrest. See e.g., O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240 (1993) (explaining that courts should not reach constitutional questions unless necessary to the disposition of the litigation) (citing Donadio v. Cunningham, 58 N.J. 309, 325-26 (1971)).

IV.

In summary, we reverse the order denying summary judgment to defendants Cruz and Imperiale. The trial court is directed to enter an order dismissing plaintiffs' complaint with prejudice as to defendants Cruz and Imperiale.

14

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4705-16T4