**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2089-18T3

LEMONT LOVE,

     Plaintiff-Appellant,

v.

MIDDLESEX COUNTY
PROSECUTOR'S OFFICE,
HELEN ZANETAKOS, CINDY
GLASER, CHRIS MULLEN,
CAROLYN BERTUCCI, GLENN
GRAU, LAURETTE WILSON,
and BRUCE KAPLAN,

     Defendants-Respondents.

_____

        Argued telephonically May 18, 2020 –
        Decided June 12, 2020

        Before Judges Sumners, Geiger and Natali.

        On appeal from the Superior Court of New Jersey, Law
        Division, Union County, Docket No. L-1551-16.

        Lemont Love, appellant, argued the cause pro se.

        Brett J. Haroldson, Deputy Attorney General, argued
        the cause for respondents (Gurbir S. Grewal, Attorney

General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Bryan Edward Lucas, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Lemont Love appeals from a March 23, 2018 order vacating default and a December 13, 2018 order dismissing his complaint with prejudice. We affirm.

I.

We derive the following facts from the record. Love was the target of a criminal investigation involving possession and distribution of controlled dangerous substance. On October 19, 2007, members of the Middlesex County Prosecutor's Office (MCPO) Task Force executed a search warrant of Love's apartment in Jamesburg. Among the numerous items seized was a bank statement for an account Love had at Sovereign Bank with a balance of $6,691.49.

The MCPO seized the funds in the bank account and on January 14, 2008, it filed a civil in rem forfeiture action pursuant to N.J.S.A. 2C:64-3(a), alleging "[s]aid monies were the proceeds from Mr. Love's illegal activities or monies used to finance and/or facilitate said illegal drug activities." The complaint alleged Love was unemployed and restrained to his residence at the time. It

sought extinguishment of Love's "property rights in said monies" and forfeiture of the monies to the participating law enforcement agencies. Conversely, Love argued the bank records during the search showed the funds on deposit were received from Rider Insurance Company and were not the proceeds of illegal drug transactions.[1]

On January 22, 2008, a Middlesex County Grand Jury returned an indictment charging Love with two counts of third-degree distribution of cocaine; one count of third-degree possession of phencyclidine (PCP); one count of third-degree forgery; and one count of fourth-degree theft or unlawful receipt of a credit card. Love was also charged with various other crimes, including additional drug offenses, in three separate indictments.

Love did not move to dismiss the forfeiture action. Instead, he agreed to an August 21, 2008 consent order staying the forfeiture action pending completion of his criminal proceedings.

---

[1] In fact, the Sovereign Bank statement for Love's checking account showed he made an ATM deposit on September 12, 2007 in the amount of $8,769.90. The account statement does not disclose the source of the deposited funds. That deposit occurred significantly after Love received two checks from Rider Insurance Company dated May 22, 2007, in the amount of $7,960.56, and August 22, 2007, in the amount $809.34.

A-2089-18T3

In March 2010, Love entered into a plea agreement with the State that resolved his pending charges under all four indictments. Pertinent to the narcotics investigation and related forfeiture involved in this case, Love pled guilty to third-degree distribution of cocaine. On that charge, the State agreed to recommend a five-year term subject to a thirty-month period of parole ineligibility. Love also pled guilty to additional charges under the other indictments, yielding a recommended aggregate ten-year sentence subject to a five-year period of parole ineligibility. The court accepted Love's plea and sentenced him accordingly.

Love's subsequent motion to withdraw his guilty plea was denied by the trial court and later affirmed on appeal. State v. Love, No. A-2483-10 (App. Div. June 21, 2013). We found Love had not made "a colorable claim of innocence and ha[d] not shown fair and just reasons for withdrawal" of the plea. Id., slip op. at 10.

Love filed a civil action in federal district court under 42 U.S.C. § 1983 against the New Jersey Department of Corrections, the MCPO, Zanetakos, and others. Love v. N.J. Dep't of Corr., No. 15-3681 (SDW), 2015 WL 4430353 (D.N.J. July 20, 2015). There, Love alleged the defendants breached an agreement that the seized funds were to be sent to his brother. Id. at *1. The

district court found that Zanetakos mailed the check refunding Love's seized monies to the prison where he was incarcerated and the prison deposited the funds into his inmate account after deducting approximately $1600 "to pay various fees owed by [Love]." Ibid. The judge noted that while Love characterized these deductions as "'spending' his money," the certified account statement attached to the complaint made "it clear that these deductions covered the costs of loans, fines, and fees [Love] owed to, among others, this [c]ourt and the State of New Jersey arising out of his criminal convictions and filing of civil suits." Id. at *1 n.1.

The district court dismissed Love's Section 1983 claims because they amounted to no more than alleged negligence, which is not a cognizable cause of action under Section 1983.[2] Id. at *4. The court also found "an adequate post-deprivation remedy" for the alleged negligence was available under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Ibid. Thus, the alleged deprivation of property without authorization did "not result in a

---

[2] In this case, Love's federal claims are blocked by collateral estoppel. His arguments are identical to those raised before the district court; he had "a full and fair opportunity to litigate the issue"; the district court entered a final judgment to which determination of the federal claims was essential; and the parties involved are identical. Perez v. Rent-a-Center, Inc., 186 N.J. 188, 199 (2006) (quoting Fama v. Yi, 359 N.J. Super. 353, 359 (App. Div. 2003)).

violation of the Fourteenth Amendment." Ibid. The court declined to exercise supplemental jurisdiction over the state law claims. Love v. Dep't of Corr., No. 15-3681 (SDW), 2016 WL 632226, at *6 (D.N.J. Feb. 17, 2016).

On February 16, 2016, Love filed this action against respondents MCPO; then Prosecutor Bruce Kaplan; Assistant Prosecutors Helen Zanetakos, Cindy Glaser, and Glenn Grau; Detectives Chris Mullen and Laurette Wilson; and Investigator Carolyn Bertucci. Love alleges respondents maliciously prosecuted him; conspired to maliciously prosecute him; violated his right to due process by depriving him of life, liberty, and property without probable cause; destroyed his property; and committed theft. Love named the individual respondents in their official and individual capacities and sought an award of compensatory and punitive damages as well as prejudgment interest.

Respondents moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e). On March 8, 2017, the motion court dismissed Love's claims except for conspiracy to maliciously prosecute. Both parties moved for reconsideration. On June 1, 2017, the motion court partially granted reconsideration and restored Love's claim for malicious prosecution.

6

Love later moved to amend his complaint, which was denied. Respondents filed an answer on August 7, 2017. After the discovery period ended in June 2018, respondents again moved to dismiss the complaint pursuant to Rule 4:6-2(e). Because respondents submitted additional supporting documents, the motion court converted the motion into one for summary judgment.[3] Love cross-moved for summary judgment. Following oral argument, the motion court a thirteen-page written opinion and order denying Love's motion for summary judgment and granting respondent's motion, dismissing the complaint with prejudice.

In his written opinion, the motion judge found: (1) respondents were entitled to absolute and qualified immunity; (2) Love's TCA claim was time-barred; (3) Love did not provide evidential support for his malicious prosecution claim and the consent order—relinquishing Love's seized money back to him—did not qualify as a "favorable termination"; and (4) Love did not provide legal or evidential support to demonstrate a conspiracy to maliciously prosecute. This appeal followed.

---

[3] If "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by [Rule] 4:46." R. 4:6-2.

Love argues the trial court erred by granting respondents' motion to dismiss based on prosecutorial immunity, qualified immunity, and late notice of tort claim; he satisfied the favorable termination element of malicious prosecution; and that he alleged sufficient facts to support his claim of conspiracy to maliciously prosecute. Notably, Love does not contend there was inadequate probable cause for the search warrant or the resulting criminal charges brought against him.

II.

We review a trial court's decision on a motion for summary judgment de novo, Henry v. Department of Human Servs., 204 N.J. 320, 330 (2010), and apply the same standard employed by the trial court, Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012). Summary judgment should be granted where there is no genuine issue of material fact, viewing the evidence in the light most favorable to the non-moving party, and the moving party "is entitled to judgment as a matter of law." Rowe, 209 N.J. at 41 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)); R. 4:46-2(c).

On appeal, we review judgments and orders, not opinions, allowing us "to affirm the trial court's decision on grounds different from those relied upon by" that court. State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011).

III.

We first address Love's claim that the motion court erred in dismissing his claims for malicious prosecution and conspiracy to maliciously prosecute based on a lack of evidential support, absolute prosecutorial immunity, and qualified immunity. We are unpersuaded by his arguments.

To demonstrate malicious prosecution, a plaintiff must demonstrate: (1) the institution of the criminal proceeding by defendant against plaintiff; (2) defendant initiated the proceeding with malice; (3) an absence of probable cause; and (4) a favorable termination for plaintiff. LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009) (citing Lind v. Schmid, 67 N.J. 255, 262 (1975)). "[E]ach element must be proven, and the absence of any one of these elements is fatal to the successful prosecution of the claim." Ibid. (citing Klesh v. Coddington, 295 N.J. Super. 51, 58 (Law Div.), aff'd, 295 N.J. Super. 1 (App. Div. 1996)).

Regarding the claim for conspiracy to maliciously prosecute, Love was required to demonstrate respondents formed an agreement "to deprive [him] of his civil rights." Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 366 (App. Div. 1993). Although the unlawful agreement need not be expressed, the participants must share the general conspiratorial objective. Weil v. Express Container Corp., 360 N.J. Super. 599, 614 (App. Div. 1993).

9

The existence of probable cause for the forfeiture action defeats any claim for conspiracy to maliciously prosecute Love.

## A.  Claims Against the Prosecutors

Prosecutors are absolutely immune from Section 1983 claims for their actions associated with the "judicial phase of the criminal process" and, thus, shielded from liability for any wrongdoing allegedly committed while acting as an advocate for the State.  Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976) (by "initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983").

Absolute prosecutorial immunity is not limited to Section 1983 claims.  It also applies with equal force to claims under the TCA for malicious prosecution and conspiracy to maliciously prosecute associated with the judicial phase of in rem forfeiture actions commenced pursuant to N.J.S.A. 2C:64-3(a).  See Schrob v. Catterson, 948 F.2d 1402, 1411 (3d Cir. 1991) (stating that "absolute immunity is extended to officials when their duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action" (citing Butz v. Economou, 438 U.S. 478, 515 (1978))).  Regarding forfeiture, the Third Circuit found "that a prosecutor seeking a seizure warrant is performing 'the preparation necessary to present a

case' and such preparation is encompassed within the prosecutor's advocacy function." Id. at 1416. Moreover, it held "that a prosecutor's actions and statements before a judge in support of an in rem complaint and seizure warrant are entitled to absolute immunity." Id. at 1417.

In the case at hand, Assistant Prosecutor Glaser presented Detective Mullen's affidavit to the court in a hearing resulting in a seizure order; Assistant Prosecutor Grau drafted and submitted the forfeiture complaint to initiate the in rem action against Love's bank account; Detective Bertucci provided a certification verifying the accuracy of the forfeiture complaint; and Assistant Prosecutor Zanetakos litigated Love's forfeiture proceeding.

Love does not claim respondents lacked probable cause to obtain the search warrant for his apartment or the resulting charges that were prosecuted, nor would any such claim be viable. The search warrant was issued by a neutral magistrate. A grand jury found probable cause and returned an indictment charging Love with the offenses. He pleaded guilty to third-degree distribution of cocaine. His conviction was affirmed on appeal.

The decision to initiate and prosecute the forfeiture action was part of the judicial phase of the criminal proceedings brought against Love. Those actions fall squarely within the absolute prosecutorial immunity afforded to prosecutors.

A-2089-18T3

Accordingly, respondents Kaplan, Zanetakos, Glaser, and Grau are absolutely immune from liability for the alleged malicious prosecution and conspiracy to maliciously prosecute. The motion court properly dismissed Love's claims against those respondents with prejudice.

B. Claims against the Detectives and Investigator

"Qualified immunity protects all officers 'but the plainly incompetent or those who knowingly violate the law.'" Connor v. Powell, 162 N.J. 397, 409 (2000) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Our Supreme Court has interpreted Section 1983 "to limit the rights of plaintiffs and to encourage disposition of the actions as a matter of law, at least when these actions arise out of an alleged unlawful arrest, search, or seizure by a law enforcement officer." Kirk v. City of Newark, 109 N.J. 173, 179 (1988). The same analysis applies to claims for malicious prosecution and conspiracy to maliciously prosecute under the TCA.

Love asserts his rights were violated by the seizure of his bank account and the initiation of the forfeiture action. "[A] law enforcement officer can defend such a claim by establishing either that he or she acted with probable cause, or, even if probable cause did not exist, that a reasonable police officer could have believed in its existence.'" Morillo v. Torres, 222 N.J. 104, 118-19

(2015) (quoting Kirk, 109 N.J. at 184). In fact, "probable cause is an absolute defense to [claims for] malicious prosecution [and] Section 1983 claims." Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (2000).

"[O]ur jurisprudence has held consistently that a principal component of the probable cause standard 'is a well-grounded suspicion that a crime has been or is being committed.'" State v. Moore, 181 N.J. 40, 45 (2004) (quoting State Nishina, 175 N.J. 502, 515 (2003)); accord Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (applying the same standard). In a forfeiture proceeding, the Supreme Court has held "a pre-trial asset restraint constitutionally permissible whenever there is probable cause to believe that the property is forfeitable." Kaley v. United States, 571 U.S. 320, 323 (2014); accord State v. Melendez, 454 N.J. Super. 445, 463-64 (App. Div. 2018) (outlining the procedure under N.J.S.A. 2C:64-3 for pre-trial asset forfeiture). Determining whether probable cause existed in a forfeiture case involves two steps: "[t]here must be probable cause to think that (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." Kaley, 571 U.S. at 323-24.

Here, the motion court found respondents had probable cause to seize Love's assets since the investigation revealed

> he had a motive and the expertise to commit the suspected crimes of drug possession and distribution, had been in the residence where the crimes and subsequent search occurred, was among the people [who] would have been aware that a large amount of [cash] might have been in that residence, and was described by witness[es] as having been in the area on several occasions around the time of the crime.

We concur. Previously, we have found that a large sum of currency in close proximity to CDS, paraphernalia, and other illegal activities is a significant factor in determining whether the currency is forfeitable. See State v. $36,560.00 in U.S. Currency, 289 N.J. Super. 237, 255 (App. Div. 1996) (noting that "money's proximity to prima facie contraband, such as controlled dangerous substances, or admitted past or planned illegal activity," in conjunction with other evidence of illegality, weighs in favor of forfeiture (quoting State v. Seven Thousand Dollars, 136 N.J. 223, 235 (1994))).

According to the search warrant inventory, along with Love's bank account statement, police also seized the following items from Love's apartment: (1) "numerous copies of one[-]hundred and fifty dollar bills"; (2) "two glass vials"; (3) "three boxes of sandwich bags"; (4) "three T-Mobile blackberry cell phones"; (5) "one prescription for Percocet"; and (6) "numerous I.D. cards." Indeed, Love does not dispute that these items were seized from his apartment and that he was indicted and pled guilty to a charge supported by this evidence.

14

Based upon the totality of the circumstances, we hold there was probable cause to seize Love's bank account and initiate the forfeiture action. Therefore, the conduct of Mullen, Wilson, and Bertucci "was justified by objectively reasonable belief that it was lawful." Connor, 162 N.J. at 409 (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)).

Because there was probable cause to initiate the forfeiture action, the motion court properly granted summary judgment dismissing Love's claims against Mullen, Wilson, and Bertucci because each are entitled to qualified immunity and cannot be found liable under Section 1983 or the TCA.

As no members of the MCPO are liable, the MCPO cannot be found liable under the doctrine of respondeat superior or otherwise.

IV.

We find no merit in Love's claim that the remittance of his funds to the Department of Corrections (DOC) rendered respondents liable for damages.

We first note that contrary to Love's assertions, there was no consent order requiring respondents to remit the seized funds to Love's brother. At most, there was an informal verbal representation that the funds would be sent to his brother. Thus, returning the funds to Love through the DOC did not violate his rights or otherwise render respondents liable for damages.

15

Inmate funds are deposited into inmate accounts. Deductions from inmate accounts shall be made for fines, assessments, restitution, other court-ordered obligations, and transaction fees. N.J.A.C. 10A:2-2.2(f). In addition, "[i]n accordance with N.J.S.A. 30:4-16.4, monies" received by an inmate that are "derived from a civil action judgment" "shall be deposited in the account of the inmate" and "used to pay court-imposed fines, restitution or penalties that the inmate has not met; and may be used to satisfy any claims for reimbursement" of the State, a county, or the DOC. N.J.A.C. 10A:2-2.2(i).

Love attempted to have the seized funds remitted to his brother rather than to his inmate account to avoid paying his outstanding financial obligations. As noted by the district court:

> [Love] did not "lose" the property at issue when the prison deposited the check. [He] still had the same amount of money at the moment that this deposit took place and the prison itself didn't keep that money for itself. As this [c]ourt noted in screening the complaint, the only loss of funds, and in turn the loss of property, occurred when the prison, in accordance with its procedures, automatically deducted . . . money which [Love] legitimately owed to the prison, the State of New Jersey, and this [c]ourt based on his criminal conviction, various loans he had taken from the prison, and fines and fees owed the State.
>
> [Love, 2016 WL 632226, at *3 n.3.]

The district court concluded "it is doubtful that any 'taking' of property without due process actually took place." Ibid. We agree.

The funds deducted from his inmate account were applied against the balances owed to the DOC, the State, and the district court. To that extent, Love suffered no loss or damages. Instead, the financial obligations he owed were reduced by the deductions made, less authorized transaction fees. Consequently, he suffered no deprivation of property without due process.

V.

In light of our rulings, we do not reach Love's claim that the trial court erred in finding his claims under the TCA were time-barred.

Love's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-2089-18T3